UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Allstate Property and Casualty
Insurance Company,
        Plaintiff

        v.                              Case No. 17-cv-50-SM
                                        Opinion No. 2018 DNH 032
Grohe Canada, Inc.,
        Defendant


                        **O R D E R**

        Allstate Property and Casualty Insurance Company, as

subrogee, brings this action against Grohe Canada, Inc.

Allstate claims that Grohe Canada designed, manufactured, and/or

sold a defective valve (known as the "Tempress II") that was a

component in a shower valve assembly installed in the home of

its insured.  That valve allegedly failed, the insured's home

flooded, and, pursuant to its contractual obligations under an

insurance policy with the insured, Allstate paid nearly $300,000

to cover the damages.  Allstate seeks to recover that money,

plus interest, and costs of this action.  In its complaint,

Allstate advances three claims against Grohe Canada: negligence,

strict product liability, and breach of warranty.  It asserts

that the court may properly exercise <u>subject matter</u> jurisdiction

pursuant to 28 U.S.C. § 1332 (diversity of the parties).

Grohe Canada counters that this is an inappropriate forum in which to address the merits of Allstate's claims because this court lacks _personal_ jurisdiction over it.  Accordingly, Grohe Canada moves to dismiss all of Allstate's claims.  Allstate objects.  Should the court conclude that it lacks personal jurisdiction over Grohe Canada, Allstate asks the court to transfer this suit to the United States District Court for the Central District of California.  See generally 28 U.S.C. § 1631.

For the reasons discussed, Grohe Canada's motion to dismiss is granted, without prejudice.  Allstate's motion to transfer is denied.

## Standard of Review

The constitutional principles governing this court's exercise of personal jurisdiction over a non-consenting defendant are well-established and need not be recounted in detail.  See generally D'Jamoos v. Atlas Aircraft Center, Inc., 669 F. Supp. 2d 167 (D.N.H. 2009).  It is sufficient to note the following: First, Allstate invokes this court's specific (rather than general) personal jurisdiction over Grohe Canada.  Additionally, the parties have, by agreement, engaged in jurisdictional discovery, but neither has requested an evidentiary hearing.  Accordingly, Allstate bears the burden of

making a prima facie showing, based upon specific facts set
forth in the record, that Grohe Canada has "certain minimum
contacts with [New Hampshire] such that the maintenance of the
suit does not offend traditional notions of fair play and
substantial justice," Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 414 (1984) (citation and internal
punctuation omitted), and that Grohe Canada's conduct bears such
a "substantial connection with the forum State" that it "should
reasonably anticipate being haled into court" here, Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-
Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).


        To carry its burden, Allstate must satisfy a three-part
test articulated by the court of appeals.


        First, the claim underlying the litigation must
        directly arise out of, or relate to, the defendant's
        forum-state activities.  Second, the defendant's in-
        state contacts must represent a purposeful availment
        of the privilege of conducting activities in the forum
        state, thereby invoking the benefits and protections
        of that state's laws and making the defendant's
        involuntary presence before the state's courts
        foreseeable.  Third, the exercise of jurisdiction
        must, in light of the Gestalt factors, be reasonable.

United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St.
Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).  An affirmative
finding as to each of those three elements - relatedness,

purposeful availment, and reasonableness - is necessary to support the court's exercise of personal jurisdiction over a defendant. See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

Parenthetically, the court notes that the New Hampshire individual long-arm statute, N.H. Rev. Stat. Ann. ("RSA") 510:4, provides jurisdiction over foreign defendants "to the full extent that the statutory language and due process will allow." Phelps v. Kingston, 130 N.H. 166, 171 (1987). Likewise, New Hampshire's corporate long-arm statute, RSA 293-A:15.10, authorizes jurisdiction over foreign corporations and unregistered professional associations to the full extent permitted by federal law. See Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995). Stated another way, New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution. Accordingly, the court need only determine whether the exercise of personal jurisdiction over a foreign defendant would comport with federal constitutional guarantees.

With those principles in mind, the court turns to Grohe Canada's motion to dismiss, as well as Allstate's motion to transfer this action pursuant to 28 U.S.C. § 1631.

**Discussion**

I.   <u>Grohe Canada's Motion to Dismiss</u>.

Based upon the undisputed evidence of record, the relevant facts – at least as they relate to this court's exercise of personal jurisdiction over Grohe Canada – are as follows.  Grohe Canada is a foreign corporation with a principal place of business in Mississauga, Ontario, Canada.  It has never been licensed, registered, or otherwise authorized to do business in New Hampshire.  It does not have a registered agent for service of process in New Hampshire.  It has never owned or leased any property in New Hampshire, nor has it ever employed anyone in New Hampshire or maintained an office in New Hampshire.  Grohe Canada has no bank accounts in New Hampshire, nor has it ever maintained a New Hampshire phone number.  Grohe Canada never sold, distributed, or delivered any products directly to any customer in New Hampshire.  Grohe Canada did not design, test, build, repair, service, or inspect the valve at issue in this case in New Hampshire – if any of that occurred, it would have happened in either Ontario, Canada, or at one of Grohe's suppliers in China.

Grohe Canada sold valve components to several Original Equipment Manufacturers (OEMs) in the United States, none of which are located in New Hampshire.  Those OEMs then

incorporated Grohe Canada's valves into their products, which

were subsequently sold to end users and retailers in the United

States. Grohe Canada did not have any input into, or control

over, where those OEMs' products were ultimately sold. Grohe

Canada did not design the valve at issue to comply with any New

Hampshire-specific code or regulatory requirements. Grohe

Canada did not advertise its products in New Hampshire, nor did

it conduct any marketing efforts in New Hampshire. <u>See</u>

<u>generally</u> Affidavit of Herb Barnhart (document no. 11-2).


In support of its assertion that the court may properly

exercise personal jurisdiction over Grohe Canada, Allstate says

the following:

> 1. The "relatedness" element of the jurisdictional
> inquiry is met because, "there is no dispute that the
> Subject Valve was ultimately used in New Hampshire.
> While <u>Defendant did not sell the Subject Valve</u>
> <u>directly to a New Hampshire-based customer</u>, Defendant
> sold its products to multiple United States-based
> entities." Plaintiff's Memorandum (document no. 22)
> at 4 (emphasis supplied);
>
> 2. The "purposeful availment" element is met because
> "Defendant purposefully and voluntarily sold its
> products to multiple United States-based entities.
> One of those products, the Subject Valve, was
> ultimately used in New Hampshire. While <u>Defendant did</u>
> <u>not purposefully target New Hampshire for the sale of</u>
> <u>its products</u>, . . . . the Subject Valve being used in
> New Hampshire was a foreseeable result of Defendant
> selling its products to multiple U.S.-based
> customers." <u>Id</u> (emphasis supplied); and, finally,

3.    It would be fair and reasonable to require Grohe
Canada to litigate in this forum because "Defendant's
burden of appearing in New Hampshire will be minimal.
Defendant has retained counsel in New Hampshire.
Plaintiff is happy to travel to wherever Defendant's
representatives are located for purposes of
depositions.  New Hampshire has an interest in
adjudicating this dispute, which arose within New
Hampshire's borders and injured a New Hampshire
homeowner.  Plaintiff is certainly interested in
obtaining convenient and effective relief in New
Hampshire."  Id. at 5.

All of that seems to be little more than an argument that Grohe

Canada introduced the allegedly defective Tempress II valve into

the American stream of commerce and knew (or should have known)

that its product might, some day, end up in New Hampshire.  That

is plainly an insufficient basis upon which this court might

properly rest the exercise of personal jurisdiction over Grohe

Canada.


More than thirty years ago, the Supreme Court held that

merely introducing a product into the "stream of commerce" is,

standing alone, insufficient to support the exercise of personal

jurisdiction over a foreign defendant.


The "substantial connection," between the defendant
and the forum State necessary for a finding of minimum
contacts must come about by an action of the defendant
purposefully directed toward the forum State.  The
placement of a product into the stream of commerce,
without more, is not an act of the defendant
purposefully directed toward the forum State.
Additional conduct of the defendant may indicate an

intent or purpose to serve the market in the forum
State, for example, designing the product for the
market in the forum State, advertising in the forum
State, establishing channels for providing regular
advice to customers in the forum State, or marketing
the product through a distributor who has agreed to
serve as the sales agent in the forum State.  But a
defendant's awareness that the stream of commerce may
or will sweep the product into the forum State does
not convert the mere act of placing the product into
the stream into an act purposefully directed toward
the forum State.

Asahi Metal Indus. Co. v. Superior Court of California, Solano

Cty., 480 U.S. 102, 112 (1987) (citations omitted; emphasis in

original).  And, in the years since that decision, the court of

appeals has repeatedly held that simply introducing a product

into the stream of commerce is insufficient to meet the

requirements of "purposeful availment."  See, e.g., Rodriguez v.

Fullerton Tires Corp., 115 F.3d 81, 85 (1st Cir. 1997) ("Even

assuming that [defendant] had specific knowledge that the stream

of commerce would move its tire rims into Puerto Rico – and

there is neither evidence nor allegation to that effect – this

awareness alone would not be enough to constitute the purposeful

availment which is necessary for a showing of minimum

contacts."); Sawtelle v. Farrell, 70 F.3d 1381, 1393 (1st Cir.

1995) ("This Court has previously declined to adopt the 'stream

of commerce' theory of personal jurisdiction . . . We are guided

to this conclusion by the Supreme Court's rejection of the claim

that a commercial enterprise should be subject to personal

jurisdiction wherever its conduct foreseeably causes injury,
regardless of whether the defendant directed its conduct toward
the forum state."); Boit v. Gar-Tec Prod., Inc., 967 F.2d 671,
683 (1st Cir. 1992) ("[B]ecause 'mere awareness' that a product
may end up in the forum state does not constitute 'purposeful
availment,' the district court could not have constitutionally
exercised personal jurisdiction over [the defendant].").

To be sure, in the wake of the Court's opinion in Asahi,
some courts have embraced what is often known as the "stream of
commerce plus" theory of personal jurisdiction. For example,
the Court of Appeals for the Fifth Circuit has observed:

> The Fourth Circuit uses the "stream-of-commerce-plus"
> framework developed in Asahi and its progeny when
> assessing whether or not the out-of-state manufacturer
> of an allegedly defective product has established
> minimum contacts with the forum state where the end-
> user of the product resides. See, e.g., Lesnick, 35
> F.3d at 946-47. The stream-of-commerce-plus test is
> premised on the notion that once a manufacturer has
> placed its product into distribution channels, it is
> foreseeable that the stream will eventually sweep the
> product into the forum state. Asahi, 480 U.S. at 110,
> 107 S.Ct. 1026. In addition to this "mere
> foreseeability," the stream-of-commerce-plus test
> requires "[a]dditional conduct of the defendant" that
> "may indicate an intent or purpose to serve the market
> in the forum State." Asahi, 480 U.S. at 112, 107
> S.Ct. 1026. In Asahi, Justice O'Connor provided
> several explicit examples of such conduct, including
> "designing the product for the market in the forum
> State, advertising in the forum State, establishing
> channels for providing regular advice to customers in
> the forum State, or marketing the product through a

distributor who has agreed to serve as the sales agent in the forum State." Id; see also Daimler, 134 S.Ct. at 755 n. 7 ("[S]pecific jurisdiction may lie over a foreign defendant that places a product into the 'stream of commerce' while also 'designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.' ") (quoting Asahi, 480 U.S. at 112, 107 S.Ct. 1026 (opinion of O'Connor, J.)).

In re Chinese Manufactured Drywall Prod. Liab. Litig., 742 F.3d 576, 588–89 (5th Cir. 2014). But, even applying the principles of that test to the facts of this case, it is plain that the record evidence fails to support the exercise of personal jurisdiction over Grohe Canada. There is, for example, no evidence that Grohe Canada designed the Tempress II for the New Hampshire market, or that it advertised in New Hampshire, or that it maintains any sales agents or distribution channels in New Hampshire.

Allstate has pointed to insufficient evidence to support its claim that this court may properly exercise specific personal jurisdiction over Grohe Canada. Accordingly, Grohe Canada's Motion to Dismiss (document no. 11) is granted, albeit without prejudice.

II.  Allstate's Motion to Transfer Pursuant to 28 U.S.C. § 1631.

Allstate asks that the case be transferred to the Central
District of California, if specific personal jurisdiction over
Grohe Canada is found wanting in this district.  When, as here,
the court determines that it lacks jurisdiction over a matter,
it is vested with authority to transfer that matter to any other
court in which the action or appeal could have been brought, if
such a transfer would serve the interests of justice.  See 28
U.S.C. § 1631.  The court of appeals has held that section 1631
creates a "presumption in favor of transfer."  See, e.g., Jonson
v. Fed. Deposit Ins. Corp., 877 F.3d 52, 58 (1st Cir. 2017);
Britell v. United States, 318 F.3d 70, 75 (1st Cir. 2003).
Critically, however, "transfer is inappropriate if it would not
cure a want of jurisdiction."  Jonson, 877 F.3d at 58.  And,
because Grohe Canada asserts that the United States District
Court for the Central District of California also lacks personal
jurisdiction over it, it says transfer under § 1631 is not
appropriate.

So, to resolve Allstate's motion to transfer, this court
must necessarily determine whether transferring the case to the
Central District of California would cure the want of
jurisdiction.  In other words, the court must determine whether
Allstate has made a prima facie showing that the California

court may properly exercise personal jurisdiction over Grohe

Canada. <u>See generally</u> <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498

(9th Cir. 1995).


    A.    Relevant Facts.

During jurisdictional discovery, Allstate says it

discovered that, during the period from roughly the early 2000's

through 2014, Grohe Canada had extensive contacts with

California, which include the following:

> Grohe Canada "directly sold, distributed, and/or
> delivered products to customers in California."
> Deposition of Herbert Barnhart, Jr. (document no. 23-
> 2) at 62;

> On a yearly basis between 2007 and 2014, Grohe Canada
> sold more than 50 units of the Tempress II valve to
> OEM customers in California - the same type of valve
> that (allegedly) failed in this case. <u>Id</u>. at 33.

> Approximately seventy percent of Grohe Canada's
> worldwide business was directed to California. <u>Id</u>. at
> 39;

> Grohe Canada sent "a regular flow of products to
> customers in California" and maintained a "regular
> course of business with customers in California." <u>Id</u>.
> at 63.

> In terms of gross revenue, Grohe Canada did more
> business in California than it did in Canada. <u>Id</u>. at
> 46.

> Between 2007 and 2014, Grohe Canada sent its employees
> to California approximately once a year. On average,
> those employees remained in California for roughly
> three days. <u>Id</u>. at 44.

But, says Grohe Canada, those contacts with California are insufficient to subject it to either general or specific personal jurisdiction in California's courts. Specifically, Grohe Canada points out that:

> Grohe Canada has never been incorporated in California. Deposition of Herbert Barnhart, Jr. (document no. 23-2) at 63;
>
> Grohe Canada did not design the Tempress II valve with any California-specific features or to comply with any California-specific requirements. Id. at 37, 62;
>
> Grohe Canada does not advertise its products in California, nor does it conduct any marketing activities in California. Id. at 58;
>
> Grohe Canada maintains no assets in California, nor has it ever paid any taxes to the State of California. Id. at 61-2; and
>
> Grohe Canada does not own property in California, it has never maintained an office in California, and it does not maintain any bank accounts in California. Id. at 59, 61.

B. Discussion.

It is unclear whether Allstate is arguing that the federal court in California may properly exercise specific or general jurisdiction, or both, over Grohe Canada. And, those two concepts are decidedly distinct.

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and

> systematic as to render them essentially at home in
> the forum State. Specific jurisdiction, on the other
> hand, depends on an affiliation between the forum and
> the underlying controversy, principally, activity or
> an occurrence that takes place in the forum State and
> is therefore subject to the State's regulation. In
> contrast to general, all-purpose jurisdiction,
> specific jurisdiction is confined to adjudication of
> issues deriving from, or connected with, the very
> controversy that establishes jurisdiction.

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915,

919 (2011) (citations and internal punctuation omitted)

(emphasis supplied). See also Daimler AG v. Bauman, 134 S. Ct.

746, 754–55, 187 L. Ed. 2d 624 (2014).[1]


        1.    General Jurisdiction.

    As the Supreme Court recently observed, when considering

whether it may properly exercise general jurisdiction over a

non-consenting foreign defendant, a court's proper inquiry "is

not whether a foreign corporation's in-forum contacts can be

said to be in some sense 'continuous and systematic,' it is

whether that corporation's 'affiliations with the State are so

'continuous and systematic' as to render [it] essentially at

home in the forum State.'"  Daimler AG v. Bauman, 134 S. Ct.

---

[1]    Because Allstate has not sought to link Grohe Canada's
California contacts in any way to the injury suffered by its
insured in New Hampshire, it is fair and reasonable to infer
that Allstate believes the district court in California may
properly exercise general personal jurisdiction over Grohe
Canada.

746, 761, 187 L. Ed. 2d 624 (2014) (quoting Goodyear, 564 U.S. at 919). See also Id. at 758 n.11 (noting that for a foreign corporation to be "essentially at home in the forum State," it must be "comparable to a domestic enterprise in that State."). Indeed, the Court of Appeals for the Ninth Circuit recently added that:

> A corporation's "continuous activity of some sorts within a state is [generally] not enough to support the demand that the corporation be amenable to suits unrelated to that activity." Int'l Shoe Co. v. Washington, 326 U.S. 310, 318 (1945). Rather, in the paradigmatic circumstance for exercising general jurisdiction, the corporate defendant is incorporated or has its principal place of business in the forum state. Goodyear, 564 U.S. at 924.

Williams v. Yamaha Motor Co., 851 F.3d 1015, 1020 (9th Cir. 2017). See also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) ("For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in continuous and systematic general business contacts, that approximate physical presence in the forum state. This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.") (citations and internal punctuation omitted); Ranza v. Nike, Inc., 793 F.3d 1059, 1069 (9th Cir. 2015) (The foreign corporation's "contacts must be constant and pervasive.

The paradigmatic locations where general jurisdiction is appropriate over a corporation are its <u>place of incorporation</u> and its <u>principal place of business</u>.  Only in an exceptional case will general jurisdiction be available anywhere else.") (emphasis supplied; citations and internal punctuation omitted). This does not appear to be an exceptional case - certainly, Allstate has not shown it to be.

Although Allstate has pointed out Grohe Canada's substantial sales to California-based OEM customers, the court is constrained to conclude that it has failed to make a prima facie showing that, for all intents and purposes, Grohe Canada is "essentially at home in" California or that its contacts with California are sufficient to "approximate physical presence" in that state.  It has, then, failed to make a prima facie showing that the federal court in the Central District of California might properly exercise general personal jurisdiction over Grohe Canada.

2.   Specific Jurisdiction.

Although Allstate does not appear to be arguing that the federal court may properly exercise specific personal jurisdiction over Grohe Canada in California, it is, perhaps, appropriate to discuss that issue nonetheless.  In the Ninth

Circuit, as in the First, three requirements must be met before a court may properly exercise specific personal jurisdiction over a non-consenting foreign defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation and internal punctuation omitted). Allstate bears the burden of satisfying the first two elements of that analysis. <u>Picot v. Weston</u>, 780 F.3d 1206, 1211 (9th Cir. 2015). It is with regard to the second element – "relatedness" – that Allstate's argument (and evidence) falls short. That is, Allstate has failed to show that its claim against Grohe Canada "arises out of or relates to" Grohe Canada's California-related activities.

Among other deficiencies in Allstate's argument is this: it has not shown (or even alleged) that Grohe Canada sold the allegedly defective valve at issue in this case to one of its OEM customers in California. On this record, it is entirely possible that Grohe Canada sold that particular valve to an OEM customer in Georgia, or Tennessee, New York, New Jersey, or

Texas - the other states into which Grohe Canada sells its products. See Barnhart deposition (document no. 23-2) at 30-33. And, as the Supreme Court has held, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).

Here, Allstate complains that Grohe Canada designed, manufactured, and sold a defective valve - a valve that eventually wound up in a product that was installed in the home of its insured in New Hampshire, where it failed, causing property damage. But, Allstate does not allege that Grohe Canada sold that particular valve in, or shipped it to, California. See generally Barnhart Deposition (document no. 23-2) at 63-64 (stating that he could not determine where the valve at issue was manufactured (and, by implication, the particular OEM to which it was sold) without seeing the valve cartridge). Nor, more generally, does Allstate allege that any of Grohe Canada's Tempress II valves originally sold to OEMs in California ever end up in New Hampshire. On this record, it is entirely possible that consumer products featuring the Tempress II valve that are sold in New Hampshire originate exclusively with OEMs in Georgia (or Tennessee, New York, New Jersey, or Texas). Consequently, it is difficult to discern how Grohe

Canada's "suit-related conduct" (i.e., design, manufacture, and sale of the allegedly defective valve that failed in New Hampshire) is tethered in any way to its conduct in California. Stated slightly differently, on this record, it is entirely possible that Allstate's insured would have suffered the very same injury even if none of Grohe Canada's California contacts had taken place. See Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 272 (9th Cir. 1995) ("Mr. Omeluk would have suffered the same injury even if none of the Washington contacts had taken place. His claim was therefore not one which arose out of or resulted from [defendant's] forum-related activities.").

In short, Allstate has failed to make a prima facie showing that the second element of the specific jurisdiction test is met. That is, it has not shown how this action "arises out of or relates to the defendant's [California]-related activities." Axiom Foods, 874 F.3d at 1068.

Finally, the court notes that at least as to Allstate's tort claims against Grohe Canada, it has also failed to meet the first element of the test for specific jurisdiction. The Court of Appeals for the Ninth Circuit has held that:

The exact form of our jurisdictional inquiry depends
on the nature of the claim at issue. . . . For claims
sounding in tort, we [] apply a "purposeful direction"
test and look to evidence that the defendant has
directed his actions at the forum state, even if those
actions took place elsewhere.

* * *

Under this test, a defendant purposefully directed his
activities at the forum if he: (1) committed an
intentional act, (2) expressly aimed at the forum
state, (3) causing harm that the defendant knows is
likely to be suffered in the forum state.

Picot, 780 F.3d at 1212-14 (emphasis supplied) (citations and

internal punctuation omitted). See generally Calder v. Jones,

465 U.S. 783 (1984). Here, there is no suggestion that

Allstate's insured suffered any harm in the State of California.


**Conclusion**

Even giving Allstate the benefit of all doubt, it has

failed to make a prima facie showing that personal jurisdiction

may be properly exercised over Grohe Canada in the Central

District of California. Accordingly, it does not appear that

transferring this matter to the Central District would cure the

want of jurisdiction. See Jonson, 877 F.3d at 58 ("While

Section 1631 creates a presumption in favor of transfer,

transfer is inappropriate if it would not cure a want of

jurisdiction.").

For the foregoing reasons, as well as those set forth in Grohe Canada's memoranda, Allstate's Motion to Transfer (document no. 23) is denied. Grohe Canada's Motion to Dismiss (document no. 11) is granted and this action is dismissed, albeit without prejudice to Allstate's ability to re-file in an appropriate jurisdiction. Should Allstate remain confident that courts in California may properly exercise personal jurisdiction over Grohe Canada, it is obviously free to file an action in that forum and endeavor to buttress its position with relevant jurisdictional support more substantial than has been offered here.[2]

The Clerk of Court shall enter judgment in accordance with this order and close the case.

   **SO ORDERED.**

                                  _____
                                  Steven J. McAuliffe
                                  United States District Judge

February 13, 2018

---

[2]   Allstate says "the statute of limitations for Plaintiff's claims hav[e] expired." Plaintiff's Memorandum (document no. 23-1) at 6. The court need not, and does not, address that issue. It does, however, note that wherever Allstate chooses to file this action, some variant of a savings statute (akin to N.H. Rev. Stat. Ann. 508:10), or principles of equitable tolling, will likely avoid any prejudice. See, e.g., Addison v. State of California, 21 Cal.3d 313, 317, 578 P.2d 941, 942 (1978).

cc: Christopher H. Boyle, Esq.
    John P. Sherman, Esq.
    Derek D. Lick, Esq.
    Thomas R. Pender, Esq.
    William J. Cremer, Esq.